| | |
|---|---|
| KAREN BAWLSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: CV508-044 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of the Commissioner denying her claim for Disability Insurance Benefits. Plaintiff urges the Court to reverse the Commissioner's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for further consideration of the evidence. Defendant asserts that the Commissioner's decision should be affirmed.

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on March 22, 2005, alleging that she became disabled on May 31, 2002, as the result of carpal tunnel syndrome and deQuervain's tenosynovitis. (Tr. at 12, 20). After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On February 27, 2007, ALJ Morton J. Gold, Jr. ("ALJ" or "ALJ Gold") held a video hearing. Plaintiff appeared and testified in Waycross, Georgia, while the ALJ presided over the hearing from Savannah, Georgia. Paul R. Dolan, a

vocational expert, also testified at the hearing. (Tr. at 12). The ALJ determined that Plaintiff was not disabled. (Tr. at 18). The Appeals Council denied Plaintiff's request for review of the ALJ's denial of benefits, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 3-5).

Plaintiff, born on November 25, 1957, was forty-nine (49) years old when ALJ Gold issued his decision. She has a high school education and completed a few college courses. (Tr. at 245-246). She has past relevant work experience as a mail handler, a mail carrier, a post office clerk, and as a rural mail carrier. (Tr. at 17).

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the plaintiff is not engaged in such activity, then the second inquiry asks whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-41. If the claimant's impairment or combination of impairments is not "severe," then disability benefits are denied. Yuckert, 482 U.S. at 141. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, subpt. P. App. 1; Yuckert, 482

U.S. at 141. If the impairment meets or equals one of the listed impairments, then the plaintiff is presumed disabled. Id. If the impairment does not meet or equal one of the listed impairments, then the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing her past relevant work. Id. If the claimant is unable to perform her past relevant work, then the final step of the evaluation process determines whether she is able to perform other work in the national economy, considering her age, education, and work experience. Yuckert, 482 U.S. at 142. Disability benefits will be awarded only if the claimant is unable to perform other work. Id.

In the instant case, the ALJ followed the sequential process to determine that Plaintiff has not engaged in substantial gainful employment after the alleged disability onset date of May 31, 2002. At Step Two, the ALJ determined that Plaintiff has the severe impairments of bilateral carpal tunnel syndrome and deQuervain's tenosynovitis of the left arm. However, the ALJ also determined, at Step Three, that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. The ALJ found that Plaintiff has the residual functional capacity to perform light exertional work, with the limitation that she is precluded from performing gripping and fine finger manipulative activities for more than four hours during an eight hour workday. (Tr. at 14). At Step Four, the ALJ found that Plaintiff is unable to perform any of her past relevant work. (Tr. at 17). The ALJ found, at Step Five, that Plaintiff is not disabled because she retains the ability to perform other jobs that exist in significant numbers in the national economy. (Tr. at 17-18).

## ISSUES PRESENTED

The issues presented in this review are whether ALJ Gold:

I.  properly discounted the opinion of Plaintiff's treating physician; and

II. properly discredited Plaintiff's subjective complaints of pain.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F. 2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F. 2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F. 2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F. 3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F. 2d at 1146.

# DISCUSSION AND CITATION TO AUTHORITY

## I. ALJ Gold did not properly discount the opinion of Plaintiff's treating physician.

Plaintiff contends that ALJ Gold improperly discounted the opinion of her treating physician, Dr. Emily D. Hoff-Sullivan. (Doc. No. 11, p. 16). Plaintiff asserts that the ALJ misinterpreted Dr. Hoff-Sullivan's opinion and never acknowledged that she limited Plaintiff to work for only four hours per day. (Id. at 17). Plaintiff further asserts that Dr. Hoff-Sullivan's determination that she was limited to working for four hours per day precludes her from attaining substantial gainful activity as it is defined by the Act. Plaintiff contends that ALJ Gold erred by assuming that Dr. Hoff-Sullivan's opinion that she could not repetitively use her upper extremities is the equivalent of performing a function for four hours per day. (Id. at 18). Plaintiff notes that Dr. Hoff-Sullivan determined that she could only lift or carry up to five pounds and Dr. Steven Lancaster limited her to lifting, pushing, or pulling ten pounds for one hour per day. Plaintiff further notes that light work requires the ability to lift and/or carry up to twenty pounds. Plaintiff asserts that the ALJ failed to provide a reason for finding that she could meet the physical demands of light exertional work despite Dr. Hoff-Sullivan's and Dr. Lancaster's opinions that she could not. Plaintiff contends that the ALJ's residual functional capacity analysis should include a discussion of how the evidence supports each conclusion, but ALJ Gold failed to specify the weight given to Dr. Hoff-Sullivan's opinion and totally ignored Dr. Lancaster's opinion. Plaintiff further contends that the ALJ erred by not properly rejecting Dr. Hoff-Sullivan's opinion, given that it was well supported by the medical evidence and consistent with other substantial evidence. (Id. at 19). Plaintiff asserts that ALJ Gold erred by giving substantial weight to the opinions of non-

examining State Agency consultants because those opinions were not well supported. (Id. at 21).

Defendant contends that the ALJ properly discounted the opinion of Dr. Hoff-Sullivan. Defendant further contends that Dr. Hoff-Sullivan did not generally limit Plaintiff to part-time work, but rather stated that she could only do her previous job on a part-time basis. Defendant notes that Dr. Hoff-Sullivan opined that Plaintiff had no limitations in her ability to sit, stand, or walk. Defendant further notes that Dr. Hoff-Sullivan never provided any rationale for limiting Plaintiff to only part-time work. (Doc. No. 12, p. 7). Defendant consequently asserts that the ALJ's reading of Dr. Hoff-Sullivan's opinion was correct. Defendant concedes that ALJ Gold did not discuss his reasons for discounting Dr. Hoff-Sullivan's opinion that Plaintiff was limited to lifting five pounds, but contends that contemporaneous treatment notes do not support such an extreme limitation for a large portion of the time at issue. Defendant asserts that the jobs ALJ Gold ultimately found Plaintiff could perform actually involve relatively little use of her hands. Defendant further asserts that even assuming ALJ Gold should have found that Plaintiff could not lift over five pounds, such limitation would probably not affect the jobs of usher and gate guard and definitely would not affect the job of surveillance system monitor. (Id. at 8). Defendant contends that the ALJ had an adequate basis for relying on the State Agency consultant's opinion in his residual functional capacity finding. (Id. at 6-7).

A treating physician's opinion is entitled to substantial weight unless good cause not to do so exists. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Jones v. Bowen, 810 F. 2d 1001, 1005 (11th Cir. 1986). There is good cause when the medical

opinion is conclusory, unsupported by objective medical findings, or not supported by evidence from the record. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards, 580 F.2d at 583. When the Commissioner rejects the opinion of the treating physician, he must give "explicit and adequate" reasons for the rejection. Elam v. Railroad Retirement Board, 921 F.2d 1210, 1215 (11th Cir. 1991). The ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefore." Sharfarz, 825 F.2d at 279 (11th Cir. 1987). When the ALJ determines that "good cause" exists to disregard a treating physician's opinion, the ALJ must clearly articulate the reasons supporting this decision. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (quoting Lewis, 125 F.3d at 1440.

ALJ Gold determined that Plaintiff has the severe impairments of bilateral carpal tunnel syndrome and deQuervain's tenosynovitis of the left arm. ALJ Gold further determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. ALJ Gold noted that he considered Plaintiff's impairments under § 1.02. The ALJ found that Plaintiff has the residual functional capacity to perform light exertional work, but is precluded from performing gripping and fine finger manipulative activities for more than four hours during an eight hour workday. (Tr. at 14).

The ALJ observed that, in making his residual functional capacity finding, he considered all of Plaintiff's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. The ALJ also considered opinion evidence. ALJ Gold remarked that the conclusions of the State Agency examiners support a finding of not disabled. ALJ Gold

further remarked that the State Agency examiners' assessments were based on a thorough review of the evidence and are consistent with the evidence of record. The ALJ noted that the State Agency examiners argued that Plaintiff was capable of medium exertional work, but gave significant weight to the May 24, 2005, State Agency evaluation that opined that Plaintiff was capable of light exertional work. ALJ Gold determined that Plaintiff was capable of light exertional work based on her testimony at the hearing and Dr. Hoff-Sullivan's medical records that were received at the hearing. (Tr. at 15).

ALJ Gold remarked that Plaintiff testified that she performed various duties while employed at the post office, but had to quit due to the inability to lift, push, and pull. ALJ Gold further remarked that, due to the alleged loss of feeling in her fingertips and wrist pain that radiates to her elbow, Plaintiff is allegedly unable to twist or turn her hand; make a fist; perform fine finger manipulations; or lift ten pounds. Plaintiff testified that she is unable to take care of her hair or perform any household chores such as cooking. Plaintiff further testified that she is able to dress herself, but cannot button or snap her clothing. The ALJ observed that the only activities Plaintiff can allegedly participate in are reading, visiting, and attending church. The ALJ further observed that Plaintiff eases her pain with Tylenol and prescription Darvocet, which makes her groggy but allows her to sleep at night. (Tr. at 16).

ALJ Gold considered the evidence of record and found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were not entirely credible. The ALJ observed that Dr. Hoff-Sullivan's medical records revealed that the use of heat compression on Plaintiff's wrist worked well. Dr. Hoff-

Sullivan's medical records further revealed that Plaintiff expressed relief of pain after receiving cortisone injections. ALJ Gold remarked that a March 21, 2006, medical report revealed that Plaintiff had reached a near full range of motion in her wrists bilaterally and demonstrated an intact neurovascular exam; her elbows reached full range of motion bilaterally with no signs of swelling, masses, or asymmetry; and her thumbs bilaterally were non-tender to palpation, exhibited a full range of motion, and displayed an intact neurovascular exam. With regard to Dr. Hoff-Sullivan's opinion of Plaintiff's condition, ALJ Gold observed that she made the determination that Plaintiff "had partial disability due to the inability to perform her *past job*; but *was able to work* four hours per day with restrictions on repetitive use of her upper extremities and lifting more than five pounds; but had no restrictions on her ability to sit, stand, or walk." (Tr. at 16, emphasis in original). The ALJ noted that Dr. Hoff-Sullivan did not rule out the performance of all work activities. The ALJ observed that Dr. Hoff-Sullivan would have considered Plaintiff's subjective symptoms in rendering her assessment and still opined that Plaintiff could return to work with some restrictions. ALJ Gold determined that the credibility of Plaintiff's testimony was undermined by her treating physician contradicting it. (Tr. at 16).

ALJ Gold remarked that two factors weighed against using Plaintiff's alleged limited daily activities as strong evidence in favor of finding her disabled. ALJ Gold first observed that allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. ALJ Gold next observed that even if Plaintiff's daily activities were as limited as alleged, it was difficult to attribute that degree of limitation to Plaintiff's medical condition, as opposed to other reasons, in light of the other factors he

discussed. The ALJ determined that Plaintiff's reported limited daily activities were outweighed by other factors. The ALJ remarked that his residual functional capacity determination was fully supported when considering Plaintiff's written statements and testimony in conjunction with the clinical facts; medical findings; and opinions of the treating, examining, and non-examining physicians. (Tr. at 17).

ALJ Gold determined that Plaintiff could not perform any past relevant work. ALJ Gold further determined that Plaintiff acquired the transferrable skills of maintaining records; collecting, organizing, and distributing information; communication skills; and cash handling skills in her past relevant work. (Tr. at 17). The ALJ observed that the vocational expert testified that a hypothetical person matching Plaintiff's age, education, past relevant work experience, and residual functional capacity could find employment as an usher, surveillance systems monitor, and gate guard monitor. The vocational expert further testified that those occupations require skills acquired in Plaintiff's past relevant work, but no additional skills. Based on the vocational expert's testimony, ALJ Gold concluded that Plaintiff has acquired work skills from past relevant work that are transferrable to other occupations with jobs existing in significant numbers in the national economy. ALJ Gold determined that, although Plaintiff's additional limitations do not allow her to perform the full range of light work, considering her age, education, and transferrable work skills, a finding of "not disabled" was appropriate. (Tr. at 18).

Dr. Hoff-Sullivan opined that Plaintiff could work for four hours per day and is "incapable of performing the full function of her date of injury job." (Tr. at 124). Dr. Hoff-Sullivan further opined that Plaintiff suffered from total disability from June 28, 2002, to October 4, 2004, and partial disability from October 4, 2004, to April 18, 2006 (the date

of the doctor's opinion). Dr. Hoff-Sullivan found that Plaintiff was restricted from any repetitive use of either upper extremity and had a weight restriction of 2-5 pounds. Dr. Hoff-Sullivan placed no restrictions on Plaintiff's ability to sit, stand, or walk. (Tr. at 124). Dr. Lancaster determined that Plaintiff could sit, stand, walk, bend, stoop, squat, kneel, and twist for eight hours, but could only reach for two hours per workday. Dr. Lancaster further determined that Plaintiff should never perform repetitive movements with her wrists and elbows and could push, pull, and lift ten pounds for only one hour per eight hour workday. (Tr. at 190). A State Agency non-examining consultant reviewed Plaintiff's files in May 2005 and determined that she could lift and/or carry twenty pounds occasionally and ten pounds frequently; sit, stand, and/or walk about six hours in an eight hour workday; had a limited ability to push and/or pull with her upper extremities; could only occasionally climb ladders, ropes, and scaffolds; had limited ability to handle and finger with no repetitive use; and needed to avoid all exposure to vibrations. (Tr. at 207-214). In September 2005, a State Agency non-examining consultant determined that Plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; sit, stand, and walk six hours; and had a limited ability to finger frequently. (Tr. at 199-205).

ALJ Gold did not properly discount the opinion of Dr. Hoff-Sullivan. In fact, the ALJ never discounts Dr. Hoff-Sullivan's opinion at all, he merely quotes from it in a manner suggesting that the doctor's opinion is consistent with his decision. It is not clear from Dr. Hoff-Sullivan's opinion whether she found that Plaintiff could only work for four hours per day at her former position at the post office or at any occupation. The ALJ has a duty to re-contact a medical source to clarify any ambiguities in the medical

evidence when the evidence is inadequate to determine whether a claimant is disabled. 20 C.F.R. § 404.1512(e)(1). It is possible that ALJ Gold did not find any ambiguity in Dr. Hoff-Sullivan's opinion and read it as only limiting Plaintiff to working four hours per day at her former job, thus he would have no duty to re-contact the doctor. However, given the ambiguity and importance of Dr. Hoff-Sullivan's opinion, it is an issue that can be easily resolved on remand. The next issue arises out of ALJ Gold's finding that Plaintiff was capable of performing light exertional work. Light work is defined as lifting no more than twenty pounds at a time, with frequent lifting or carrying of objects weighing up to ten pounds. SSR 83-10. Despite the obvious incompatibility of Dr. Hoff-Sullivan's finding that Plaintiff had a weight restriction of five pounds with ALJ Gold's determination that she was capable of performing light exertional work, the ALJ fails to address the issue, much less provide "explicit and adequate" reasons for rejecting Dr. Hoff-Sullivan's opinion. See Elam, 921 F.2d at 1215. Defendant's contention that such an extreme degree of limitation is not supported by the treatment notes for a large portion of the time at issue is unpersuasive. First, in support of that contention, Defendant points to three treatment notes spanning a period of approximately four months in 2003. Four months hardly constitutes "a large portion" of the nearly five year period of treatment at issue in this case. Secondly, even if Defendant's contention that the treatment notes did not support Dr. Hoff-Sullivan's opinion were true, ALJ Gold failed to clearly articulate that as a reason supporting his decision as he is required to do. See Phillips, 357 F.3d at 1240-41. Defendant's second contention that there was no error even if ALJ Gold should have found that Plaintiff could not lift over five pounds because such limitation would probably not prevent her from performing the jobs the

ALJ found she could do is similarly without merit. Defendant's argument is highly speculative and ALJ Gold would have needed to address this in his decision, which, again, he did not. See Id.

ALJ Gold also improperly afforded significant weight to the opinion of the non-examining State Agency consultant. "[T]he report of a non-examining doctor is accorded little weight if it contradicts an examining doctor's report; such a report, standing alone, cannot constitute substantial evidence. Edwards v. Sullivan, 937 F.2d 580, 584 (11th Cir. 1991). The State Agency consultant's opinion that Plaintiff could perform light exertional work is contradictory to her treating physician's opinion that she could lift no more than five pounds. As ALJ Gold did not properly discount Dr. Hoff-Sullivan's opinion, he should have afforded little weight to the State Agency consultant's opinion and it was error for him to do otherwise.

It is not clear whether Dr. Lancaster should be considered Plaintiff's treating physician or whether he merely evaluated her once for a worker's compensation case. (Tr. at 190, 286). While ALJ Gold may not have been required to discount Dr. Lancaster's opinion if he was not a treating physician, the ALJ was required to state with particularity the weight he gave different medical opinions and the reasons therefore. See Sharfarz, 825 F.2d at 279. ALJ Gold did not mention Dr. Lancaster's opinion in his decision even though the doctor's opinion was contradictory to his findings.

It is unnecessary to address Plaintiff's remaining enumerations of error at this time.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

So **REPORTED** and **RECOMMENDED**, this 18th day of May, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE